UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KI O. SON,

        Appellant,

  v.

HEUNG SER PARK,

        Appellee.

                                    /

No. C 10-00085 MHP

**MEMORANDUM & ORDER**

Re: Appeal from Bankruptcy Court Judgment of Nondischargeability

        Appellant Ki O. Son ("Son") appeals a Bankruptcy Court decision holding that a Superior Court judgment entered against debtor, Son, in favor of Appellee, Heung Ser Park ("Park"), is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Son also challenges the Bankruptcy Court's calculation of Park's damages. Having considered the parties' arguments and submissions, for the reasons set forth below, this court enters the following memorandum and order.

BACKGROUND

        This action arose from a dispute between Son and Park over a single-family residence construction contract. In 2004, Son, doing business as Son General Contracting, contracted to build a residence for Park at 22810 Mercedes Road, Cupertino, California. Docket No. 14 (Appellant's Excerpts of Record), Exh. K (*Park v. Son (In re Son)*, Case No. 08-3011 (Bankr. N.D. Cal. 2009) (Memorandum Decision)) at 1. A dispute over the contract arose in 2005, and Son filed suit against Park, seeking to foreclose Son's mechanic's lien on the property. Appellant's Excerpts of Record,

Exh. C (*Son v. Park*, Case No. 1-05-CV-044656 (Super. Ct. Santa Clara Cnty. January 8, 2009) (Order)) at 1.  After the dispute arose, Park lost the lot and its improvements to foreclosure. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 4.

In response, Park filed a cross-complaint for breach of contract, fraud, negligence, negligent misrepresentation, breach of fiduciary duty, conversion, constructive trust, constructive fraud, contractor's licence revocation, and unfair business practices against Son and his company. Appellant's Excerpts of Record, Exh. E (Cross-Complaint) at 17-21.  Park alleged that Son made a series of misrepresentations regarding the progress of construction.  *Id.* at 10-12.  The alleged misrepresentations included Son's assertions that the foundation had passed city inspections, that the lumber used in the framing was new and complied with the contract terms, and that Son had paid the sub-contractors as necessary.  *Id.*  Park alleged that in fact the foundation's reinforcing steel rebar had failed the city inspections, and thus the city would not allow the foundation to be used at all.  *Id.* Park also alleged that the sub-contractors had not in fact been paid on time, and that the lumber used in the framing was old.  *Id.*  After Son filed an answer denying the allegations, and after consolidation with several other cases relating to the same construction contract, the parties reached a settlement.  Appellant's Excerpts of Record, Exh. C (*Son v. Park*, Case No. 1-05-CV-044656 (Super. Ct. Santa Clara Cnty. 2009) (Stipulated Judgment)) at 1.

The pertinent settlement for this case is the agreement settling Park's cross-claims against Son.  The parties recited the terms of the settlement agreement on the record before Judge Leslie C. Nichols of the Santa Clara County Superior Court on October 3, 2007.  Appellant's Excerpts of Record, Exh. B (*Son v. Park*, Case No. 1-05-CV-044656 (Super. Ct. Santa Clara Cnty. October 3, 2007) (Settlement Hearing Transcript)).  The settlement provided that Son would pay Park $380,000, to be paid in specified installments, with the first payment of $170,000 due on November 2, 2007.  *Id.* at 17:1-9.  If any payment was missed, the agreement provided that Park could move the Superior Court *ex parte* to issue a stipulated judgment in the amount of $480,000, and Son could seek a determination of partial satisfaction for any amounts already paid.  *Id.* at 18:10-16.  Son and

2

Park agreed that the stipulated judgment would be based on a finding of fraud, but did not agree on specific language. *Id.* at 22:10-12.

Son failed to make the first payment and instead filed a bankruptcy petition on November 1, 2007. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 2. On February 6, 2008, Park filed an adversary proceeding seeking a determination that Son's liability under the settlement agreement was nondischargeable under 11 U.S.C. § 523(a)(2)(A) as a debt for money obtained by fraud. *Id.* The Bankruptcy Court granted Park relief from the automatic stay. *Id.* This allowed Park to return to Santa Clara County Superior Court and seek entry of the stipulated judgment, per the terms of the settlement agreement. *Id.* On June 19, 2008, Judge Nichols entered judgment against Son in the amount of $480,000 plus interest, for a total of $505,643.84. Appellant's Excerpts of Record, Exh. C (Stipulated Judgment) at 2. The judgment included findings of fraud, based on the facts admitted to by Son at the settlement hearing, and pursuant to the agreement that the judgment would be entered with a finding of fraud. *Id.* at 2-3. Son filed an appeal which the California Court of Appeal dismissed for failure to prosecute. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 3. Son also petitioned the Superior Court to set aside the judgment. *Id.* The Superior Court denied the motion to set aside the judgment in an order which emphatically reaffirmed the stipulated judgment. Appellant's Excerpts of Record, Exh. C (Order) at 3.

Park then returned to the Bankruptcy Court and made a motion for summary judgment under section 523(a)(2)(A), arguing that the Superior Court judgment established all of the required elements to show that the debt is nondischargeable. The Bankruptcy Court granted the motion in part, finding that the judgment established that: 1) Son had obtained money from Park by false representations; 2) Son knew the representations were false when he made them; 3) Son made the representations with the intent to deceive Park; 4) Park relied on the representations; and 5) Park sustained damages as a result of Son's representations. Appellant's Excerpts of Record, Exh. I (*Park v. Son (In re Son)*, Case No. 08-3011 (Bankr. N.D. Cal. 2009) (Order Granting Partial Summary Judgment)) at 2.

3

The Bankruptcy Court then held a trial on the remaining element, whether Son's misrepresentations caused the damages awarded by the judgment. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 3. The court found that Son's failure to obtain the necessary permits for the steel reinforcement for the foundation and his continued construction without obtaining approval from the city caused the city to conclude that the house could not be completed without replacing the foundation and framing. *Id.* The court then found that Son's misrepresentations regarding these facts caused Park to lose both the amount he paid Son and the value of the lot itself. *Id.* The court found that as a result of Son's misrepresentations, Park lost the lot to foreclosure, because he did not have sufficient funds to both rebuild the foundation and pay the mortgage on the lot. *Id.* The court found that Son's misrepresentations caused damages totaling at least the entire amount of the state court judgment. *Id.* Based on these findings, the Bankruptcy Court held that the entire amount of the judgment against Son was nondischargeable under section 523(a)(2)(A). *Id.* Son now appeals the Bankruptcy Court's judgment finding the entire amount of the Superior Court judgment nondischargeable to this court.

LEGAL STANDARD

Under 28 U.S.C. § 158(c)(1), this court has jurisdiction to hear appeals from final judgments of the United States Bankruptcy Court for the Northern District of California. The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007). The bankruptcy court's finding of whether an element of a section 523(a)(2)(A) claim is present is a factual determination reviewed for clear error. *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir. 1996). A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a definite conviction that a mistake has been made. *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 729 (B.A.P. 9th Cir. 1999).

4

DISCUSSION

I.  Nondischargeability of the Judgment

A debt for money "obtained by false pretenses, a false representation, or actual fraud" is nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(2)(A). To prove that a debt stems from fraud and is exempt from discharge, a creditor must establish the following elements: 1) the debtor made representations; 2) the debtor knew those representations to be false at the time they were made; 3) the debtor made those representations with the intent to deceive the creditor; 4) the creditor justifiably relied on the debtor's representations; 5) the creditor sustained damages as a proximate result of those representations. *In re Eashai*, 87 F.3d 1082, 1086 (9th Cir. 1996). The creditor seeking to establish that a debt is nondischargeable must prove these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 284 (1991).

Appellant contends that the Bankruptcy Court erred in determining that the entire amount of the Superior Court judgment is nondischargeable as a debt for money obtained by false representations under 11 U.S.C. § 523(a)(2)(A). Son argues that the debt is dischargeable because Park allegedly failed to prove facts sufficient to allow the Bankruptcy Court to rely on the Superior Court judgment to find that the debt from the settlement agreement is nondischargeable.

The Bankruptcy Court partially granted Park's motion for summary judgment, holding that the Superior Court judgment established four of the five elements necessary to show nondischargeability, leaving only the amount of damages caused by Son's fraud to be shown at trial. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 3. The Bankruptcy Court proceeded to hold a trial to determine whether the amount of damages awarded in the Superior Court judgment was the proximate result of Son's fraud. *Id.* After trial, the Bankruptcy Court found that the entire amount of the judgment was a result of Son's fraud and held that the judgment was nondischargeable. *Id.* at 3-4.

In concluding the settlement agreement, Son agreed that if he breached the terms of the agreement, then the stipulated judgment would resolve Park's fraud claims against him. Appellant's Excerpts of Record, Exh. B (Settlement Hearing Transcript) at 22:4-7. While the settlement

5

agreement contained a general release of all claims and no admission of liability, the parties agreed that the stipulated judgment, if signed by the Superior Court upon Son's failure to comply with the agreement, would state an admission of fraud. *Id.* at 28:25-29:3. The Superior Court asked counsel to confirm the court's understanding that the settlement agreement would not contain an admission of liability by either party, but that the stipulated judgment would contain an admission by Son that he had committed fraud against Park. *Id.* at 31:14-23. Son's counsel confirmed that "[t]he stipulated judgment that Mr. Son will execute will contain language that it is entered based on the finding of fraud." *Id.* at 22:10-12. The Superior Court then directed its questioning to Son himself, who affirmed that he understood the agreement his counsel recited, and that he was indeed agreeing to the settlement, and all its provisions. *Id.* at 33:23-34:2. The Superior Court then approved the settlement and directed the parties to act in accordance with its terms. *Id.* at 37:21-26.

The stipulated judgment made by the Superior Court after Son failed to make the first payment noted the fact that Son had agreed in the settlement that the judgment issued if he failed to comply with the settlement agreement would be based upon the court's findings of fact and law that he had committed fraud, based on his admission that he had committed fraud against Park in the settlement conference hearing. Appellant's Excerpts of Record, Exh. C (Stipulated Judgment) at 2. In the judgment, the Superior Court found "that Son committed actual fraud against Park based on the facts admitted to by Son at the Hearing." *Id.* at 2-3. The court went on to make specific findings of fraud:

> The Court makes the following legal and factual findings: (a) that Son willfully deceived and made material misrepresentations to Park, including that he had obtained the necessary permits and approvals from the City of Cupertino for the foundation work and the excavation work he performed at Park's real property; (b) Son made the misrepresentations set forth above in paragraph 2(a) with knowledge of their falsity, with intent to induce Park to tender payments pursuant to the construction contract; (c) Park justifiably relied on Son's misrepresentations set forth above in paragraph 2(a); and (d) as a proximate and direct result of Son's misrepresentations set forth above in paragraph 2(a), Park has been damaged in an amount substantially more than the amount agreed upon by the parties.

*Id.* at 3.

The Bankruptcy Court relied on these specific findings made by the Superior Court, on the settlement agreement, and the settlement hearing, in finding that the judgment established four of the

6

five elements necessary to prevent discharge of the debt but did not establish the exact amount of the debt that was due to fraud. Appellant's Excerpts of Record, Exh. I (Order Granting Partial Summary Judgment) at 2. The Bankruptcy Court found that Son failed to obtain the necessary permits for the foundation's steel reinforcement, and had continued construction while unable to prove to the city that he had the permits. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 3-4. Due to Son's failure to secure city inspection and approval of the foundation, the city refused to allow the house to be completed without removing and replacing the framing and foundation, as the inspectors could not assess whether Son had properly reinforced the foundation. *Id.* Son did not remove and replace the defective foundation, instead leaving that task to Park. *Id.* The Bankruptcy Court then found that Park was unable to pay for both the removal and replacement and the mortgage on the lot. *Id.* The Bankruptcy Court concluded that Park lost the value of the lot, $280,000, and the value of the payments made by Park to Son, at least $328,790, as a result of Son's misrepresentations. *Id.* Therefore, the Bankruptcy Court held as a matter of law that, based on those factual findings, the entire amount of the judgment arose from Son's fraudulent conduct and is nondischargeable under 11 U.S.C. § 523(a)(2)(A). *Id.* Finding no clear error, this court affirms the Bankruptcy Court's holding that Park established every element of nondischargeablity of Son's debt.

Son further contends that the Bankruptcy Court improperly gave collateral estoppel effect to the stipulated judgment, arguing that the issue of fraud was not actually litigated and that there was no fraud admission by Son. Federal courts, including bankruptcy courts, must apply a state's law regarding collateral estoppel when deciding whether a state court judgment is entitled to issue preclusive effect. *Jung Sup Lee v. TCAST Comm., Inc. (In re Lee)*, 335 B.R. 130, 136 (B.A.P. 9th Cir. 2005). Applying California law, five elements must be met for the court to give collateral estoppel effect to a judgment: 1) the issue must be identical as the issue litigated in the prior proceeding, 2) the issue must have been actually litigated, 3) the issue must have been necessarily decided in the prior proceeding, 4) the decision in the prior proceeding must be final and on the merits, and 5) the party against whom preclusion will be applied must be the same as, or in privity with, the original party. *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1123 (9th Cir.

7

2003). While stipulated judgments are not generally given collateral estoppel effect, where the record or the judgment evidences an intent by the parties for a judgment to be given collateral estoppel effect, a court can give effect to such a judgment. *In re Berr*, 172 B.R. 299 (B.A.P. 9th Cir. 1994); *see Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 655 (B.A.P. 9th Cir. 1998) ("[I]f the parties stipulated to the underlying facts that support a finding of nondischargeability, the Stipulated Judgment would then be entitled to collateral estoppel application."). In this case, the settlement agreement hearing and the judgment itself both provide strong evidence that the parties intended the stipulated judgment to have collateral estoppel effect in any future proceedings as to the issue of fraud. At the hearing counsel for both Park and Son declared to the court that they intended the stipulated judgment, if entered, to survive bankruptcy, as a judgment resolving Park's fraud claim against Son. Appellant's Excerpts of Record, Exh. B (Settlement Hearing Transcript) at 24:15-25:4. Son agreed that the admission of fraud and sufficient findings of fact supporting the fraud finding would be included in the stipulated judgment. *Id.* at 22:10-12, 33:23-34:2. The parties also indicated their intent that the settlement agreement and stipulated judgment would resolve all claims arising from this transaction. *Id.* at 30:2-31:23. This court finds no clear error in the Bankruptcy Court's application of collateral estoppel effect to the Superior Court judgment thus finding that Son committed fraud and establishing the first four elements of nondischargeability.

Son also contends that the judgment cannot be found nondischargeable as a matter of public policy, arguing that the agreement to include findings of fraud in the stipulated judgment amounted to an invalid pre-petition waiver of dischargeability, relying on *In re Huang*, 275 F.3d 1173, 1178 (9th Cir. 2002) for support. Pre-petition waivers of dischargeability are invalid, as a pre-petition waiver of a debt defeats the Bankruptcy Code's goal of allowing a "fresh start" to "the honest but unfortunate debtor," because creditors would simply force debtors to agree to waive dischargeability as a condition of incurring a debt. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). However, this rule is not implicated where the underlying facts show that the debt at issue falls within one of the statutory discharge exceptions. *Id.* at 287. These exceptions include debts for child support, alimony, fraud, and educational loans. *Id.* For these types of debts, Congress has determined that

8

the creditor's interest in securing a full recovery trumps the debtors' interest in a fresh start, by providing that debts which meet these exceptions cannot be discharged in bankruptcy. *Id.*

As the Supreme Court stated in *Archer v. Warner*, 538 U.S. 314, 321 (2003), a judgment can be nondischargeable in bankruptcy as a debt for money obtained from fraud, when the settlement agreement and stipulated judgment enforcing that settlement agreement resolve state-law claims for fraud. In Archer, the parties settled an action brought by Archer against Warner for fraud in the context of a business dispute. *Id.* at 317. The settlement agreement released all claims, stated that no party admitted liability, and provided for an initial payment by Warner to Archer of $200,000, with the remaining $100,000 to be paid over time, secured by a promissory note for that amount. *Id.* Warner failed to make the first payment on the note, and instead filed for bankruptcy. *Id.* at 317-18. Archer then filed an adversary proceeding before the bankruptcy court, seeking a determination that the $100,000 note was nondischargeable as a debt for fraud. *Id.* at 318. The Court found that even though the settlement resolved and embodied all of the state-law claims raised by Archer, the bankruptcy court retains the power to determine if the settlement agreement is a debt for money obtained by fraud, rejecting Warner's theory that the settlement agreement replaced the original debt with a new, purely contractual debt. *Id.* at 320. Allowing a bankruptcy court to look beyond the settlement and judgment to determine if the debt is a debt for fraud fulfills Congress' intent "to ensure that all debts arising out of fraud are excepted from discharge, no matter what their form." *Id.* at 321 (citations omitted). The court remanded the case to allow the Archers to show that the settlement debt arose from fraud. *Id.* at 323.

In this case, the Bankruptcy Court undertook this analysis, determining whether the stipulated judgment is a debt for fraud by looking to the settlement agreement and underlying facts. The debt at issue in *Archer v. Warner* was a debt for monies promised in a settlement agreement, but the Court relied on its decision in *Brown v. Felsen* where the Court considered a similar situation where the debt was due under a stipulated consent decree, finding that the bankruptcy court has the power to look beyond the judgment or settlement agreement to determine the nature of the debt–whether it is a debt for fraud. 442 U.S. at 128-29, 138-39. As the Court stated in *Archer v.*

9

*Warner*, "[a] debt embodied in the settlement of a fraud case 'arises' no less 'out of' the underlying fraud than a debt embodied in a stipulation and consent decree." 538 U.S. at 321. Here, the debt at issue derives from a settlement agreement resolving all claims held by Park against Son and is embodied in a stipulated judgment. Further, the Superior Court issued a judgment per the terms of the settlement agreement between Son and Park, which provided specifically that the judgment was for fraud. The Bankruptcy Court considered the nature of this debt in its memorandum decision, and concluded that it is a debt for fraud, relying on the language of the Superior Court judgment, and on the fact that, just as in *Archer* and *Brown*, the debt arose out of an agreement to resolve a dispute involving underlying claims of fraud. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 3-4 (finding facts showing that Son's debt to Park arose out of Son's fraud).

Further, Son's reliance on *Huang* is misplaced, as he admitted in the settlement agreement hearing that the judgment would contain an admission of fraud, and the facts support that finding of fraud as made by the Superior Court and confirmed by the Bankruptcy Court. In *Huang*, the creditor and the debtor entered into a settlement agreement resolving the creditor's claims for fraud and other causes of action against the debtor. *In re Huang*, 275 F.3d at 1178. The settlement agreement included no admission of fraud on the debtor's part, nor did the agreement include any facts showing that the debtor had committed fraud. *Id.* While the settlement resolved claims including fraud, the court found that since the agreement included no admission of fraud by the debtor nor any facts supporting fraud, the agreement was an invalid pre-petition waiver of the debtor's discharge rights. *Id.* The court relied on the fact that the settlement agreement included an explicit admission by the defendant debtors that the agreement would not be dischargeable in bankruptcy and that the debtors would not challenge any attempt by creditors to have the debt declared nondischargeable, but without any underlying facts showing fraud by the debtor. *Id.* at 1176. Unlike *Huang*, this is not a case where the creditor forced the debtor to waive discharge pre-petition, without any underlying facts supporting a finding of fraud; but instead is a case where the facts, including the admission by Son at the settlement hearing, show that the settlement agreement and associated judgment are debts for fraud. *See In re Cole*, 226 B.R. at 655-56 (granting discharge of a debt where a stipulated

judgment contained a nondischargeability provision, but lacked facts supporting a fraud determination; amounting to an invalid pre-petition waiver of discharge). The Bankruptcy Court's factual determination that the judgment is a debt for fraud under 11 U.S.C. § 523(a)(2)(A) is not clearly erroneous, as the court's findings are supported by the underlying facts.

## II.     Damages Calculation

Son contends the Bankruptcy Court erred in determining the amount of damages attributable to his fraud. Son argues first that the payments made by Park to Son are irrelevant, and second that the proper measure of damages is the difference between what was contracted for, a completed house, and what was received, a partially completed structure. Son contends that Park did not prove the amount of his damages because he did not include evidence as to the value of the foundation or other improvements received, relying instead on the payments made by Park to Son as his evidence regarding the amount of damages. Son further contends that the damages determination cannot be made without evidence of what a solution to repair the foundation would have cost.

The measure of damages in a fraud case under California law, applicable in this case because the stipulated judgment is a California judgment for fraud, provides that a person "defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received." Cal. Civ. Code § 3343. In addition, the statute provides that "[a]mounts actually and reasonably expended in reliance upon the fraud" are recoverable. *Id.*; *see Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1240-41 (1995); *McCauley v. Dennis*, 220 Cal. App. 2d 627, 632-33 (1963). In its decision partially granting Park's summary judgment motion, the Bankruptcy Court found that the stipulated judgment alone did not establish the amount of damages caused by Son's false representations. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 3. During a trial on this issue, the Bankruptcy Court heard testimony from the Chief Building Official of the City of Cupertino as to what had occurred on the property. Appellant's Excerpts of Record, Exh. M (*Park v. Son (In re Son)*, Case No. 08-3011 (Bankr. N.D. Cal. 2009) (Trial Transcript)) at 4-5. After

trial, the Bankruptcy Court found as a factual matter that Son poured the foundation without obtaining the necessary permits and that he was unable to prove to the city that the foundation was properly reinforced once poured. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 3-4. The court further found that Son had continued construction on the flawed foundation without obtaining approval from the city. *Id.* at 4. As a result of this failure, the city stopped construction, and instead required that the framing be demolished and the foundation replaced. *Id.* Son failed to remedy the situation by replacing the foundation. *Id.* The court found that Park lost the property to foreclosure due to Son's misrepresentations, as Park did not have sufficient funds to pay both the mortgage and another contractor to replace the defective foundation. *Id.* The court thus found that Son's conduct caused Park to lose the value of the lot, $280,000, and the payments already made to Son for the construction, at least $328,790; totaling more than the amount of the stipulated judgment. *Id.* The court relied on these factual findings to conclude that the entire amount of the stipulated judgment, $505,643.84, was nondischargeable as a debt for fraud arising from Son's misrepresentations to Park. *Id.*

Contrary to Son's contention, the Bankruptcy Court did not err in determining the measure of damages without considering what it would cost to replace or repair the foundation. The measure of damages requires evidence of what Park received, which the court implicitly determined was nothing. Son argues that the foundation as delivered is not valueless, relying on the fact that the new (post-foreclosure) owner of the property has not removed the foundation yet. Appellant's Excerpts of Record, Exh. M (Bankruptcy Court Trial Transcript) at 32:24-33:13, 34:11-18. Son also cites statements by the City of Cupertino official that the city has not issued an order requiring removal of the foundation and a consultant's report that the steel reinforcement was correctly placed. *Id.* at 27:10-15, 40:19-23. After the trial, the Bankruptcy Court concluded that the foundation was defective and unusable, based on the testimony of a City of Cupertino official. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 4. The city official testified that the city never issued a formal order requiring removal of the foundation because it was not necessary, as the new owners acknowledged that they will have to remove the foundation before continuing with any plans to use

12

the property. Appellant's Excerpts of Record, Exh. M (Bankruptcy Court Trial Transcript) at 13:18-14:2, 17:3-8, 17:15-18:2. Further, the foundation cannot be removed until the new owner implements a removal and rebuilding plan, given the hillside lot and the city's stability concerns. *Id.* at 28:2-6. Contrary to Son's assertions, while the official noted that the new owners have the option to come up with a plan to use the site in constructing a house, the official stated clearly that the foundation cannot be used and will have to be removed. *Id.* at 33:18-20. Thus, the fact that Park did not present evidence as to the cost of replacing the foundation is irrelevant; as the proper measure of damages turns on the value of what Park received—here an unusable foundation and not the cost of what it would take to repair Son's construction errors. The Bankruptcy Court's determination that the property received by Park is of no value is not clearly erroneous, and thus his damages are measured as the amount paid to Son together with the losses proximately caused by Son's fraud.

Son further contends that there was insufficient evidence proffered by Park connecting Son's fraud with the loss of the lot due to foreclosure. The Bankruptcy Court found the loss of the lot to be a foreseeable result of Son's fraud, finding that Park lost the lot to foreclosure because he could not afford to both pay the mortgage and demolish and rebuild the foundation and framing. Appellant's Excerpts of Record, Exh. K (Memorandum Decision) at 4. While the Bankruptcy Court did not include in its findings an estimate of the cost to demolish and rebuild the foundation and framing, the court reasonably inferred that the cost to demolish and replace the foundation and framing would be at least as much as was paid initially and that Park did not have sufficient funds to pay again what he had already paid in addition to the mortgage and thus the value of the lot lost to foreclosure is included within the losses caused by Son's fraud. Moreover, as the measure of damages for fraud in California includes amounts reasonably expended in reliance on the fraud, this court finds no clear error in the Bankruptcy Court's conclusion that the loss of the lot in foreclosure was attributable to Son's fraud. Park's down payment on the lot was paid in reasonable reliance on the expectation that Son would complete the contract as promised and that he would not have to pay twice for the foundation, once to Son and once to repair Son's mistake. Once Son failed to complete the contract as expected, Park's loss of the lot in foreclosure included the loss of the down payment, money

13

reasonably expended in reliance on Son's fraudulent performance under the contract. This court finds no clear error in the Bankruptcy Court's factual findings that the loss of the lot to foreclosure was a result of Son's fraud and affirms its legal conclusion that the entire amount of the judgment is nondischargeable under section 523(a)(2)(A).

CONCLUSION

The court AFFIRMS the order, the partial summary judgment, and the final judgment of the Bankruptcy Court. The Clerk shall enter judgment affirming the order and judgment of the Bankruptcy Court appealed herein.

IT IS SO ORDERED.

Dated: November 18, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California